UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FRANK MORSE, JR.,

                    Petitioner,

vs.                                    Case No.  2:08-cv-829-FtM-29DNF

SECRETARY, DEPARTMENT OF CORRECTIONS
and  ATTORNEY  GENERAL  STATE  OF
FLORIDA,

                    Respondents.
_____

## OPINION AND ORDER

### I. Status

Frank Morse, Jr., (hereinafter "Petitioner" or "Morse") who is represented by counsel, filed a Petition for Writ of Habeas Corpus ("Petition," Doc. #1) pursuant to 28 U.S.C. § 2254. The Petition challenges Petitioner's judgment of conviction for first degree felony murder, which was entered in the Twelfth Judicial Circuit Court, DeSoto County, Florida (case number 2003-CF-412), for which Petitioner was sentenced to life imprisonment. Petition at 2.[1] On November 2, 2005, Petitioner's sentence and conviction were affirmed, *per curiam*, on direct appeal. Id.

The Petition *sub judice* raises two grounds for relief:

---

[1]The page numbers referenced within this Order, other than to the page number referenced in the Exhibits, are to the page of the identified document as it appears on the Court's case management electronic computer filing system. Exhibits are available in paper format only.

**Ground 1:** Morse was deprived of his constitutional right to effective assistance of counsel when his trial attorney failed to move to strike juror April Canon for cause. Said ineffectiveness of counsel deprived Morse of his right to a fair trial before an unbiased jury.

**Ground 2:** Morse was denied his right to effective assistance of counsel when his trial attorney failed to make an adequate motion for judgment of acquittal on Morse's behalf.

Petition at 3. Petitioner submits a Memorandum of Law in Support of the Petition (Doc. #2, Memorandum). Respondent filed a Response to the Petition (Doc. #13, Response). Respondent submits that the Petition should be denied due to Petitioner's failure to satisfy his burden under 28 U.S.C. § 2254(d), (e). Response at 1. Respondent filed exhibits (Exhs. 1-18) in support of the Response, including the four-volume record on direct appeal (Exh. 18). Petitioner filed a reply to the Response (Doc. #11, Reply). This matter is ripe for review.

## II. Applicable § 2254 Law

### A. Deferential Review

Morse filed his timely[2] Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007); Penry v. Johnson, 532

---

[2]The AEDPA imposes a one-year statute of limitations on § 2254 actions. 28 U.S.C. § 2244(d). Respondent concedes that the Petition is timely filed. Response at 5.

U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007). Pursuant to AEDPA, a federal habeas court employs a "highly deferential standard" when reviewing State court judgments. McNair v. Campbell, 416 F.3d 1291, 1297 (11th Cir. 2005); see also Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002); Stewart v. Sec'y Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007). AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). Thus, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See Brown v. Payton, 544 U.S. 133, 141 (2005); Price v. Vincent, 538 U.S. 634, 638-39 (2003). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. Ferguson, 527 F.3d at 1146; Wright v. Sec'y Dep't of Corr., 278 F.3d 1245, 1253-54 (11th Cir. 2002). See also Peoples

v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. Carey v. Musladin, 549 U.S. 70, 74 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). In cases where nothing in the Supreme Court's jurisprudence addresses the issue on point or the precedent is ambiguous and gives no clear answer to the question, it cannot be said that the state court's conclusion is contrary to, or constitutes an unreasonable application of, "clearly established Federal law." Wright v. Van Patten, 128 S. Ct. 743, 747 (2008); Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003).

A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially indistinguishable" from those in a decision of the Supreme Court and yet arrives at a different result. Brown, 544 U.S. at 141; Mitchell, 540 U.S. at 15-16. Further, it is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the

result . . . contradicts them." <u>Early v. Parker</u>, 537 U.S. 3, 8 (2002); <u>Mitchell</u>, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, <u>Brown</u>, 544 U.S. at 134; <u>Bottoson v. Moore</u>, 234 F.3d 526, 531 (11th Cir. 2000), <u>cert. denied</u>, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Bottoson</u>, 234 F.3d at 531 (quoting <u>Williams</u>, 120 S. Ct. at 1520). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-77 (2003) (citation omitted); <u>Mitchell</u>, 540 U.S. at 17-18. Depending upon the legal principle at issue, there can be a range of reasonable applications. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 663-64 (2004). Thus, the state court's decision is not subject to federal review <i>de novo</i>; rather, § 2254(d)(1) relief is only available upon a showing that the state court decision meets the "objectively unreasonable" standard. <u>Id.</u> at 665-66.

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2254(d)(2).  Where the credibility of a witness is at issue, relief may only be granted if it was unreasonable, in light of the evidence presented, for the state court to credit the testimony of the witness in question.  Rice v. Collins, 546 U.S. 333, 338 (2006).  Additionally, a factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Miller-El v. Dretke, 545 U.S. 231, 240 (2005); Henderson, 353 F.3d at 890-91.  This statutory presumption of correctness, however, "applies only to findings of fact made by the state court, not to mixed determinations of law and fact."  Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001) (citation omitted).  An ineffective assistance of counsel claim is a mixed question of law and fact; therefore, the presumption does not apply and such claims are reviewed de novo. Rolling v. Crosby, 438 F.3d 1296, 1299 (11th Cir.), cert. denied sub nom. Rolling v. McDonough, 126 S. Ct. 2943 (2006).

Finally, if the state court fails or declines to rule on the merits of a particular claim raised before it, that claim falls outside of the scope of § 2254(d)(1)'s restrictions and the reviewing federal habeas court owes no deference to the state court

decision when evaluating that claim. <u>Davis v. Sec'y Dep't of Corr.</u>, 341 F.3d 1310, 1313 (11th Cir. 2003).

**B.  Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). <u>Newland v. Hall</u>, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. <u>Newland</u>, 527 F.3d at 1184. In <u>Strickland</u>, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, <u>i.e.</u>, "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, <u>i.e.</u>, there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 688; <u>see also</u> <u>Bobby Van Hook</u>,

558 U.S. ___, 130 S. Ct. 13, 16 (2009); <u>Cullen v. Pinholster</u>, ___U.S. ___, 131 S.Ct. 1388, 1403 (2011).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." <u>Bobby Van Hook</u>, 130 S. Ct. at 17 (internal quotations and citations omitted). It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006), <u>cert. denied</u> <u>sub</u> <u>nom.</u> <u>Jones v. Allen</u>, 127 S. Ct. 619 (2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000) (quoting <u>Strickland</u>, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. <u>Id.</u> A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689. An attorney is not ineffective for failing to raise or preserve of a meritless issue. <u>Ladd v. Jones</u>, 864 F.2d 108, 109-10 (11th Cir.), <u>cert. denied</u> <u>sub nom.</u> <u>Ladd v. Burton</u>, 493 U.S. 842 (1989); <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case,

could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting <u>Burger v. Kemp</u>, 483 U.S. 776, 794 (1987)).

### III. Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, <u>Chandler v. McDonough</u>, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. <u>Schriro</u>, 127 S. Ct. at 1940; <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert. denied</u>, 541 U.S. 1034 (2004).

The Court adopts the following "Statement of Facts" set forth in Petitioner's brief on direct appeal:

> On July 31, 2003, Viola King had her purse snatched from her in the Winn Dixie parking lot in Port Charlotte, Florida, at approximately 9:00 p.m. (Vol. III, pp. 18-19, 24). Ms. King testified that a man took her purse and then rode away in a dark Jeep being driven by a girl. Ms. King could not see the girl's face. (Vol. III, pp. 18-19). Ms. King identified Mr. Morse as the individual who took her purse. (Vol. III, p. 22). The 911 call to Charlotte County reporting the purse snatching was logged at 9:21 p.m.(Vol. III, p. 109).

Deputy Tucker was the first officer to begin pursuit of Mr. Morse on the night of July 31, 2003. After Mr. Morse was pointed out to Deputy Tucker as the Jeep drove by Mr. Morse's parents' home, Deputy Tucker began his pursuit at 9:34 p.m. (Vol. III, pp. 33-35). However, Deputy Tucker called in that he had lost the vehicle at 9:37 p.m. (Vol. III, p. 37).

By stipulation, evidence was entered into the record that a transaction was made on Ms. Viola King's bank card at an Amoco station in Port Charlotte at 9:50 p.m. (Vol. III, p. 42). Ms. King previously testified that she did not conduct this transaction.

Detective Collins a traffic officer at the time of the relevant events, testified that he began pursuit of a dark Jeep at 9:53 p.m. on July 31, 2003. (Vol. III, pp. 51-53, 1 12). Detective Collins testified, over objection, that he believed the occupants of the Jeep were armed and dangerous. (Vol. III, pp. 53-54).

A high speed chase then ensued through Charlotte County and into DeSoto County. (Vol. III, p. 54-61, 79-83). Eventually, the Jeep hit stop sticks which were placed on the road by DeSoto County police officers. The jeep continued down the road after hitting the stop sticks and collided with an oncoming car. (Vol. III, p. 61, 84-87). The collision resulted in the death of the driver of the Jeep in which Mr. Morse was a passenger, as well as the driver of the oncoming car, Walter Brewer, the victim in this case. (Vol. III, 132).

Also over objection, Deputy King testified that he found an unloaded pistol in the Jeep after the accident. (Vol. III, pp. 90-91, 98).

Exh. 1 at 2-3.

The Court will address each of Morse's ineffective assistance of counsel claims consistent with these aforementioned principles. In doing so, the Court has reviewed the full post-conviction record, including the transcript from the evidentiary hearing and the relevant portion of the trial transcripts.

**A.  Ground One**

In Ground One, Morse faults trial counsel for failing to move to strike Juror April Canon.  Petition at 3.  Petitioner states that Juror Canon stated during *voir dire* that "she believed that Mr. Morse had to put on evidence to demonstrate his innocence." Id.  In particular, Juror Cannon when asked about the burden of proof stated "He [pointing to defense counsel] has to prove to us that he didn't commit the crime and he [pointing to the state attorney] has to prove that he did[], so we have to take both of them and make our decision."[3] Exh. 18 ("TT"), Vol. II at 121. Trial counsel did not raise a challenge to Juror Cannon, and she sat as a juror on Petitioner's case.  Id.  Consequently, Petitioner contends that he was denied an impartial jury and thus, denied a fair trial.  Id. at 4.

Petitioner raised this issue as ground one in his Rule 3.850 motion, filed on July 28, 2006.  Exh. 5 at 2.  The post conviction court granted Petitioner a "limited evidentiary hearing on this

---

[3]At the inception of the hearing, Petitioner's counsel made the Court aware that the there was "a typo in the transcript" of Juror Cannon's response during her questioning. The above statement was the statement actually made by Juror Cannon.  Exh. 7 ("E.H.") at 4.
  Ms. Cannon made her remark immediately after prospective juror Mr. Hemingway, a retired police officer, stated to Mr. Tebrugge during *voir dire* that: "I see it a different way.  Defense attorneys will have to prove beyond a reasonable doubt that his client is innocent to me."  Mr. Tebrugge moved to strike Mr. Hemingway due to his comment about the burden of proof and he did not sit as a juror.

issue." Exh. 6 at 3. On September 10, 2007, an evidentiary hearing was held at which Petitioner was represented by Attorney Rhoton. Exh. 7 ("E.H."). On October 9, 2007, the post conviction court issued an order denying Petitioner relief on this ground. Exh. 10. The post conviction court, citing to <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), found that Morse had failed to establish that Juror April Cannon was actually biased against him. <u>Id.</u> at 4. Further, the post conviction court found that trial counsel's decision not to strike Juror April Cannon was a strategic decision. <u>Id.</u> In particular, the post conviction court, in relevant part, found as follows:

> At the evidentiary hearing, Adam Tebrugge and John Scotese, the Defendant's trial attorneys, testified. Mr. Tebrugge has been a public defender since May 1985, and Mr. Scotese has been an attorney in Florida since July 1994. Both have represented numerous defendants.
>
> The Defendant's case included issues surrounding the Defendant's drug use, and thus one of the trial strategies included speaking to jurors about their feelings on drug use. During jury selection for the Defendant's trial, Mr. Tebrugge addressed the potential jurors, while Mr. Scotese took notes. Neither Mr. Tebrugge nor Mr. Scotese recalled the interactions with Ms. Cannon very well. Nevertheless, their notes from jury selection reflect that Ms. Cannon stated her brother had done a lot of drugs, she and her husband worked for Teen Challenge (a program for troubled teens), and that the graphic nature of photos of the victims would not bother her because she "butcher[ed] animals." <u>See</u> Attachment 3. The Court notes that the Defendant was present throughout jury selection and assisted his attorneys with it, and after the jury was selected the Defendant indicated to the Court that this was an acceptable jury panel.

Claims of ineffective assistance of counsel must be reviewed under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), in which the Supreme Court held that to establish an ineffective counsel claim, the Defendant must meet two tests. <u>See</u> <u>Peterka v. State</u>, 890 So. 2d 219, 228 (Fla. 2004). First, that counsel's performance was deficient, for which "a defendant must establish conduct on the part of counsel that is outside the broad range of competent performance under prevailing professional standards." <u>Peterka</u>, 890 So. 2d at 228. "Second, as to the prejudice prong, the deficient performance must be shown to have so affected the fairness and reliability of the proceedings that confidence in the outcome is undermined." <u>Id.</u> "[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." <u>Occhicone v. State</u>, 768 So. 2d 1037, 1048 (Fla. 2000). "A lawyer's competence in failing to make a cause challenge should not be reviewed in a 3.850 proceeding in the same way that a denial of a cause challenge is reviewed on direct appeal." <u>Jenkins v. State</u>, 824 So. 2d 977, 982 (Fla. 4th DCA 2002). "Because a defendant must demonstrate prejudice in a 3.850 proceeding, post-conviction relief based on a lawyer's incompetence with regard to the composition of the jury is reserved for a narrow class of cases where prejudice is apparent from the record, where a biased juror actually served on the jury." <u>Id.</u> "After trial, the <u>Strickland</u> requirement of actual prejudice imposes a more stringent test before a new trial can be ordered for the failure to object to a person's service on a jury. It is whether the lawyer's failure to raise a challenge resulted in a biased juror serving on the jury." <u>Id.</u> "The nature of the juror's bias should be patent from the face of the record," and "[o]nly where a juror's bias is so clear can a defendant show the necessary prejudice under <u>Strickland</u>, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> (relating the error required to "fundamental error").

First, the Defendant argues that "a juror's statement that a defendant would be required to introduce evidence to convince her the defendant was not guilty pointedly demonstrates the juror's preconceived opinion of guilt

and consequently requires the defendant to prove his innocence rather than requiring the state to prove his guilt." Def.'s Br., at 11. In light of the corrections made to the transcript during the evidentiary hearing, and the evidence presented at the hearing, the Court does not read Ms. Cannon's statement that she had a preconceived notion that the Defendant was guilty, but rather as an inartful attempt by a non-lawyer to explain that each side will have an opportunity to present their evidence and then at the end, the jury would have to render its decision. Ms. Cannon's comments are not like the comments cited by the Defendant as from Mr. Hemingway: "You must show me that he did not commit the crime. I must hear facts about [sic] he did not commit that crime." Def.'s Br., p. 21. Unlike the statement made by Ms. Cannon, this statement is a clear assertion of an expectation that the Defendant must prove his innocence. The Court does not find that Ms. Cannon's statements show bias.

In addition, the Court finds that the decision not to strike Ms. Cannon was tactical. Although neither Mr. Tebrugge nor Mr. Scotese could recall any tactical reasons for not striking Ms. Cannon, the Court finds that the decision as to Ms. Cannon reflect a strategic decision made by Mr. Tebrugge and Mr. Scotese. One of the aspects of the trial was drug use, and Ms. Cannon indicated that she was familiar with addiction to and problems associated with drug use. She also indicated that she and her husband worked at a program for troubled teens, and that she would not be affected by looking at photos of the victims, both of which are factors which would have been beneficial to the defense.

Exh. 10 at 2-5. The appellate court *per curiam* affirmed. <u>Morse v. State</u>, 991 So.2d 866 (Fla. 2d DCA 2008); Exh. 14.

Clearly, Petitioner is entitled to an impartial jury. <u>Turner v. Murray</u>, 476 U.S. 28, 36 n. 9 (1986) ("The right to an impartial jury is guaranteed by both the Sixth Amendment . . . and by principles of due process."). The "determination of impartiality

. . . is particularly within the province of the trial judge."
Rideau v. Louisiana, 373 U.S. 723, 733 (1963).

Here, the post conviction court correctly identified and applied the Strickland federal analysis as the governing standard in evaluating a claim that counsel was ineffective for failing to object to the seating of Juror Cannon. See Jackson v. Herring, 42 F.3d 1350, 1361 (11th Cir. 1995). "Recognizing the temptation for a defendant to second-guess counsel's assistance after conviction or adverse sentence, the Court established that counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment." Cullen v. Pinholster, 131 S.Ct. at 1403 (internal quotations and citations omitted). Here, the presumption that co-counsel Mr. Tebrugge and Mr. Scotese's performance was reasonable under the circumstances is even stronger because the record reflects that both were experienced criminal defense attorneys.[4]

Reading the entirety of *voir dire* proceeding in context, the Court agrees with the post conviction court's finding that Ms.

---

[4] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001). At the evidentiary hearing, Mr. Tebrugge testified that he had been employed by the Public Defender's Office for 23 years and had "well over a hundred" types of homicide trials. E.H. at 7, 17. See Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), cert. denied, 530 U.S. 1246 (2000).

Cannon's bias is not evidenced by the face of the record. In Florida, "[t]he test for determining juror competency is whether the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court." Smith v. State, 28 So.3d 838, 859 (Fla. 2009) (citing Lusk v. State, 446 So.2d 1038, 1041 (Fla. 1984)). Here, the statement by Juror Cannon immediately made after Juror Hemingway's statement indicates that Juror Cannon disagreed with Juror Hemingway's contention that the defense must prove beyond a reasonable doubt that the defendant is innocent.[5] Consequently, Juror Cannon's statement, standing alone, does not indicate that she was unable to apply the law or set aside any prejudices. See Irvin v. Dowd, 366 U.S. 717, 723 (1961)(recognizing that "to hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.").

"It is Petitioner's burden to introduce evidence proving trial counsel's deficiency." Harvey v. Warden, Union Corr., 629 F.3d 1228, 1244 (11th Cir. 2011). Where a record is silent or

_____

[5]In fact, after Juror Cannon made her comment, Mr. Tebrugge responded "All right. That's a great point Ms. Cannon." TT, Vol. II at 121.

incomplete, the Court assumes that counsel acted reasonably. <u>Id.</u> (citing <u>Williams v. Head</u>, 185 F.3d 1223, 1228 (11th Cir. 1999)(stating "where a record is incomplete or unclear about [trial counsel's] actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment."). Similarly, "when the evidence is unclear or counsel cannot recall specifics about his actions due to the passage of time and faded memory, we presume counsel performed reasonably and exercised reasonable professional judgment." <u>Blakenship v. Hall</u>, 542 F.3d 1253, 1274 (2008)(citations omitted).

Here, the transcript of the venire panel fails to completely identify which juror is being questioned. In fact, the majority of the questioning by both the prosecution and defense counsel reflects only that a "Prospective Juror" made a comment or agreed to a statement made by counsel. <u>See</u> <u>generally</u> TT, Vol. II. The court reporter's failure to identify the name of the potential juror being questioned is further frustrated by the fact that counsel failed to address the majority of the juror's by name. However, in response to whether any juror had "any concerns about being able to follow the Court's instructions," none of the jurors responded in the affirmative. <u>Id.</u> at 114-115. The fact that the trial court, the prosecution, and neither Mr. Tebrugge nor Mr. Scotese, who was assisting in the venire process taking notes and consulting with Mr. Tebrugge, expressed a concern with Ms. Cannon's

statement is further evidence that the tone of the statement when made, and in the context made, raised no concerns.

Despite defense counsels' inability to recollect whether Juror Cannon was selected for strategical purposes, the evidence submitted at the evidentiary hearing support the defense's expressed strategy of selecting jurors who may have been sympathetic to Petitioner's and the driver of the vehicle's drug problems and who would not "be inflamed by a gruesome photograph." E.H. at 15, 18. Although Mr. Tebrugge could not recall specifics about the jury selection in Petitioner's case he did opine that jury selection

> is certainly more of an art than a science. It's different in every case. It depends on the individual jurors as well as the jury as a whole. And it depends upon the facts of your individual case.

E.H. at 18. Because counsel's decision to keep Ms. Cannon on the panel "'might be considered sound trial strategy,'" defense counsel "cannot be adjudged incompetent." Strickland (quoting Darden v. Wainwright, 477 U.S. 168, 187 (1986)). Thus, Petitioner has not demonstrated that trial counsel's failure to strike Juror Cannon was an act that no competent counsel would have taken. Of significance is the fact that Petitioner was represented at trial by two defense attorneys and neither moved to strike Juror Cannon. Consequently, at least one other defense counsel would not have struck Juror Cannon. Based upon the foregoing, the Court finds that the state court's adjudication of this claim was not contrary

to or an unreasonable application of clearly established federal law. Petitioner has not demonstrated by clear and convincing evidence that the state court's factual findings are incorrect. Thus, the Court finds Petitioner has failed to carry his burden under 28 U.S.C. § 2254(d)(2),(e)(1).

Assuming *arguendo* that Petitioner could prove that counsel was deficient for failing to object to the seating of Juror Cannon, Petitioner cannot satisfy the prejudice prong of Strickland. "[T]he Supreme Court has not concluded that a lawyer who leaves an arguably biased juror on a jury is *per se* ineffective." Babb v. Crosby*,* 197 F. App'x 885, 887 (11th Cir. 2006). The overwhelming evidence of guilt in this case precludes any finding that Petitioner suffered prejudice.

Further, the trial court instructed the jurors on the law to be followed in their deliberations, and provided the jurors with a copy of the instructions. TT, Vol. IV at 104-117. The trial court stated that the burden of proving all elements "beyond a reasonable doubt" is upon "the State." Id. at 106. The trial court further instructed the jury that:

> The Defendant has entered a plea of not guilty, this means you must presume or believe the Defendant is innocent. The presumption stays with the Defendant as to each material allegation in the indictment through each stage of the trial unless it has been overcome by the evidence to the exclusion of and beyond a reasonable doubt.
>
> To overcome the Defendant's presumption of innocence the State has the burden of proving the crime with which the

> Defendant is charged was committed and the Defendant is the person who committed the crime.
>
> The Defendant is not required to present evidence or prove anything.

Id. at 110. There is an "almost invariable assumption of the law that jurors follow their instructions." Richardson v. Marsh, 481 U.S. 200, 206 (1987). Thus, Petitioner can not demonstrate that Juror Cannon actually tainted the jury. At the conclusion of the trial, each juror confirmed that the unanimous guilty verdict reflected their individual verdict. Id. at 120-122. Consequently, the Court denies Ground One as without merit.

## A. Ground Two

In Ground Two, Morse faults trial counsel for failing to make an adequate motion for judgment of acquittal on his behalf. Petition at 4. Petitioner contends that trial counsel "omitted crucial facts which should have been argued to the court." Id. Petitioner claims that the omission of these facts "likely resulted in the denial of [Petitioner's] Motion for JOA." Id. More specifically, Petitioner alleges that law enforcement officers began a pursuit of his vehicle for reasons other than the robbery. Memorandum at 17-18. Thus, Petitioner argues that he could not be held liable for felony murder because there was "a break in the chain of circumstances," but counsel did not clearly identify this "two of three minute time gap" between the officer's pursuit of

Petitioner and the issuance of the BOLO during his argument for JOA.  Id. at 18.[6]

Petitioner raised this issue as ground two in his Rule 3.850 motion, filed on July 28, 2006.  Exh. 5 at 3.  The post conviction court summarily denied this ground, in its May 8, 2007 Order, finding that Petitioner "was not prejudiced."  Exh. 6 at 3-5. Significantly, the post conviction court found that even if counsel had made the argument suggested by Petitioner, the trial court would have denied the JOA.  In pertinent part, the post conviction court held as follows:

> Florida law provides that one of the primary factors in determining whether there has been a break in the chain of circumstances is "whether the fleeing felon has

---

[6]At the close of the State's case, defense counsel moved for a judgment of acquittal arguing as follows:

> As the Court has heard, there was this allegation of a purse snatching that occurred at the Winn-Dixie and that the Defendant was the person who took the purse, got into a Jeep and the Jeep left the parking lot of the Winn-Dixie, and from that point forward, there was no hot pursuit, there was no continuous pursuit, there were gaps in time where nobody knew where the Defendant was.
>
> He's in his home neighborhood, that was established by the evidence, where his parents lived and where he resided. There's no showing in the evidence that he was in possession of any proceeds from the victim at the time that the automobile accident occurred. And so the State has completely failed to show that there was no break in the chain of circumstances. . .

TT, Vol. IV at 57.  Additionally, the post conviction court noted that Petitioner concedes that defense counsel did state the critical facts with specificity during closing arguments to the jury. Exh. 6 at 3, n. 10.

reached a place of temporary safety."[FN11] Although it is true that law enforcement's initial pursuit began for a different purpose prior to the issuance of the BOLO, there remained a question as to whether the Defendant had reached a temporary place of safety after committing the robbery. According to the facts, the initial pursuit began at approximately 9:34 p.m., and the BOLO was issued at about 9:36 or 9:37 p.m. The driver and the Defendant evaded law enforcement and stopped at an Amoco station, using the robbery victim's bankcard for the purchase at about 9:50 p.m.[FN12] Upon seeing law enforcement approximately three to four minutes after leaving the Amoco station, the driver and the Defendant immediately began to flee."[FN13] At this point, the second pursuit commenced, which ended in a car crash killing the driver and the victim. These factual circumstances do not conclusively determine a definitive break in the chain of circumstances. Thus, even if defense counsel had asserted these facts with specificity, the Court was obligated to deny the motion.

The Florida Supreme Court has stated that a motion for judgment of acquittal should not be granted, "unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law."[FN14] "Where there is room for a difference of opinion between reasonable men as to the proof or facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded facts, the Court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail and not primarily the views of the judge. The credibility and probative force of conflicting testimony should not be determined on a motion for judgment of acquittal."[FN15] Here, the evidence presented raised factual issues for jury determination. Interestingly enough, under similar circumstances as these, the First District Court of Appeal has determined that a definitive break in the chain of circumstances did not occur.

In Parker v. State, after the defendants committed robbery, a high-speed chase ensued, which caused the death of a deputy sheriff.[FN16] Between the time of the robbery and the pursuit, the defendants stopped at a convenience store to get gas.[FN17] In concluding that the robbery was not completed at the time of the death of

the deputy sheriff, the Court reasoned that, "the time from the robbery to the killing was no longer than an hour, the killing occurred no more than several miles from the robbery, and the only stops that the robbers made were to get gas and ask directions — all to accomplish their goal of fleeing from the scene of the crime to a place of safety." [FN18]  Based on the foregoing facts and law, the Court denies this claim.

> [FN11] <u>Parker v. State</u>, 570 So. 2d 1048, 1051 (Fla. 1st DCA 1990).

> [FN12] 12 Tr. 42:6-15 (10/26/04).

> [FN13]  OFFICER COLLINS: "The Jeep had slowed as it was going to make a turn to the right onto Sandhill. When I made eye contact with the vehicle, at that point I believe they made contact with me, seeing my patrol vehicle and me standing there, the vehicle then turned erratically back into traffic to the left, heading northbound onto Kings Highway towards the DeSoto county line, cutting off several vehicles. Q: Did they do that at a high speed? A: Yes." Tr.: 51:11-19 (10/25/04).

> [FN14]  <u>Lynch v. State</u>, 293 So. 2d 44,45 (Fla. 1974).

> [FN15]  <u>Id.</u> at 45.

> [FN16]  <u>Parker v. State</u>, 570 So. 2d 1048 (Fla. 1st DCA 1990).

> [FN17]  <u>Id.</u> at 1050.

Exh. 6 at 3-5.  The appellate court *per curiam* affirmed.  <u>Morse v. State</u>, 991 So.2d 866 (Fla. 2d DCA 2008); Exh. 14.

Although an ineffective-assistance-of-counsel claim is a federal constitutional claim which is considered under <u>Strickland</u>, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's

-23-

construction of its own law." <u>Will v. Sec'y for Dep't of Corr.</u>,
278 F. App'x 902, 908 (11th Cir. 2008)(citations omitted). Here,
Petitioner asserts ineffective assistance when trial counsel failed
to adequately present, under Florida law, his motion for a judgment
of acquittal at the conclusion of the State's case. "The purpose
of a motion for judgment of acquittal is to test the legal
sufficiency of the evidence presented by the [S]tate." <u>Harris v.
State</u>, 954 So.2d 1260, 1261 (Fla. 5th DCA 2007). There is
"sufficient evidence to sustain a conviction if, after viewing the
evidence in the light most favorable to the State, a rational trier
of fact could find the existence of the elements of the crime
beyond a reasonable doubt." <u>Baugh v. State</u>, 961 So.2d 198, 204
(Fla. 2007).

Here, the State courts found sufficient evidence had been
presented by the prosecution to overcome any motion for judgment of
acquittal, and thus any such motion would have been futile. In
particular, the post conviction court found sufficient evidence for
the jury to find that Petitioner had not reached his point of
safety. Consequently, the post conviction court unequivocally
stated that, based upon prevailing Florida precedent, it would not
have granted a judgment of acquittal even if trial counsel had
provided the additional crucial facts that Petitioner claimed
counsel omitted. Thus, Petitioner cannot demonstrate the prejudice
prong required by <u>Strickland</u>.

With regard to Ground Two, the Court finds that the State courts' factual determinations were not unreasonable determinations based on the evidence presented, even without giving the factual determinations the benefit of the presumption of correctness in § 2254(e). Additionally, the State court's decisions were not contrary to or an unreasonable application of clearly established federal law. Consequently, the Court denies Petitioner relief on Ground Two.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED** for the reasons set forth above.

2. The **Clerk of Court** shall terminate any pending motions, enter judgment accordingly, and close this case.

**CERTIFICATE OF APPEALABILITY AND**
**LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED**

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, petitioner

"must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

 **DONE AND ORDERED** in Fort Myers, Florida, on this   15th   day of March, 2012.


_____

**JOHN E. STEELE**
**United States District Judge**


SA: hmk

Copies: All Parties of Record